# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| SABATINO MAGLIONE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FLUOR CORPORATION, DAVID E. CONSTABLE, JAMES R. BREUER, JOHN C. REGAN, and JOSEPH L. BRENNAN,<br><br>Defendants. | Case No. 3:25-cv-2496<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sabatino Maglione ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Fluor Corporation ("Fluor" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Fluor securities between

February 18, 2025 and July 31, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Fluor provides engineering, procurement, and construction ("EPC"), fabrication and modularization, and project management services worldwide.  The Company operates through three segments: Urban Solutions, Energy Solutions, and Mission Solutions.

3.      Throughout 2024 and the first quarter ("Q1") of 2025, Fluor's Urban Solutions segment accounted for the largest portion of the Company's revenue and profit.  The Urban Solutions segment offers EPC and project management services to the advanced technologies and manufacturing, life sciences, mining and metals, and infrastructure industries, as well as provides professional staffing services. The Company's infrastructure projects in this segment include work on, *inter alia*, the Gordie Howe International Bridge ("Gordie Howe"), as well as the Interstate 365 Lyndon B. Johnson ("I-635/LBJ") and Interstate 35E ("I-35") highways in Texas.

4.      In February 2025, Fluor provided financial guidance for the full year ("FY") of 2025, including adjusted EBITDA[1] of $575 million to $675 million and adjusted earnings per share ("EPS") of $2.25 per share to $2.75 per share.  Defendants reaffirmed the foregoing financial guidance in May 2025, notwithstanding their acknowledgement of the potential negative impacts of ongoing economic uncertainty on Fluor's business resulting from trade tensions and other market conditions.  Contemporaneously, Defendants touted, *inter alia*, the purported health and stability of Fluor's and its customers' operations and the strength of the Company's risk mitigation strategy, both for itself and its clients.

---

[1] "EBITDA" stands for earnings before interest, taxes, depreciation, and amortization.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding Fluor's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) costs associated with the Gordie Howe, I-635/LBJ, and I-35 projects were growing because of, *inter alia*, subcontractor design errors, price increases, and scheduling delays; (ii) the foregoing, as well as customer reduction in capital spending and client hesitation around economic uncertainty, was having, or was likely to have, a significant negative impact on the Company's business and financial results; (iii) accordingly, Fluor's financial guidance for FY 2025 was unreliable and/or unrealistic, the effectiveness of the Company's risk mitigation strategy was overstated, and the impact of economic uncertainty on the Company's business and financial results was understated; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

6.      On August 1, 2025, Fluor issued a press release reporting its financial results for the second quarter ("Q2") of 2025.  Among other results, the press release reported Q2 non-GAAP[2] EPS of $0.43, missing consensus estimates by $0.13, and revenue of $3.98 billion, representing a 5.9% year-over-year ("Y/Y") decline and missing consensus estimates by $570 million. Defendants blamed these disappointing results on, *inter alia*, growing costs in multiple infrastructure projects due to subcontractor design errors, price increases, and scheduling delays, as well as reduced capital spending by customers.  The same press release also provided a negatively revised financial outlook for FY 2025, guiding to adjusted EBITDA of $475 million to $525 million, down significantly from Defendants' prior guidance of $575 million to $675 million, and adjusted EPS of $1.95 per share to $2.15 per share, down significantly from Defendants' prior

---

[2] "GAAP" stands for generally accepted accounting principles.

guidance of $2.25 per share to $2.75 per share, citing "client hesitation around economic uncertainty and its impact on new awards and project delays and results for the quarter[.]"

7.    The same day, Fluor hosted a conference call with investors and analysts to discuss the Company's Q2 2025 financial results.  During that call, the Company's Chief Executive Officer ("CEO"), Defendant James R. Breuer ("Breuer"), disclosed that the infrastructure projects that had negatively impacted Fluor's Q2 2025 results were the Gordie Howe, I-635/LBJ, and I-35 projects.

8.    Following the foregoing disclosures, Fluor's stock price fell $15.35 per share, or 27.04%, to close at $41.42 per share on August 1, 2025.

9.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Fluor is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

13.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.    Plaintiff, as set forth in the attached Certification, acquired Fluor securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.    Defendant Fluor is a Delaware corporation with principal executive offices located at 6700 Las Colinas Boulevard, Irving, Texas 75039.  Fluor's common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "FLR."

16.    Defendant David E. Constable ("Constable") has served as Executive Chairman of Fluor's Board of Directors (the "Board") since May 1, 2025, before which he served as the Company's CEO at all relevant times.  During the Class Period, Defendant Constable sold 263,156 shares of Fluor's common stock for total proceeds of approximately $11.28 million.

17.    Defendant Breuer has served as Fluor's CEO since May 1, 2025, before which he served as the Company's Chief Operating Officer at all relevant times.

18.    Defendant John C. Regan ("Regan") has served as Fluor's Chief Financial Officer ("CFO") since March 1, 2025.

19.    Defendant Joseph L. Brennan ("Brennan") served as Fluor's CFO from before the start of the Class Period to March 1, 2025.

20.    Defendants Constable, Breuer, Regan, and Brennan are collectively referred to herein as the "Individual Defendants."

5

21.    The Individual Defendants possessed the power and authority to control the contents of Fluor's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Fluor's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Fluor, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.    Fluor and the Individual Defendants are collectively referred to herein as "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

<u>**Background**</u>

23.    Fluor provides EPC, fabrication and modularization, and project management services worldwide.  The Company operates through three segments: Urban Solutions, Energy Solutions, and Mission Solutions.

24.    Throughout 2024 and Q1 2025, Fluor's Urban Solutions segment accounted for the largest portion of the Company's revenue and profit.  This segment offers EPC and project management services to the advanced technologies and manufacturing, life sciences, mining and metals, and infrastructure industries, as well as provides professional staffing services.

25.    The Urban Solutions segment's infrastructure business supports the development of projects with a focus on state departments of transportation, providing a broad range of services,

including consulting, design, planning, financial structuring, engineering, construction and operation, and maintenance services.  The Company's infrastructure projects include work on, *inter alia*, Gordie Howe and the I-35 and I-635/LBJ highways Texas.

## Materially False and Misleading Statements Issued During the Class Period

26.    The Class Period begins on February 18, 2025, when Fluor issued a press release during pre-market hours reporting its fourth quarter ("Q4") and FY 2024 financial results.  That press release provided financial guidance for FY 2025, stating, in relevant part[3]:

> In consideration of the timing of new awards and the pace of execution on the existing backlog, ***we are establishing an adjusted EBITDA guidance for 2025 of $575 to $675 million and adjusted EPS of $2.25 to $2.75 per share***. Estimates for 2025 assume a tax rate of 30 to 35% percent.

27.    The same press release also quoted Defendant Constable as stating:

> Our results for 2024 reflect our four-year journey of ***building a robust reimbursable backlog across diverse end markets, strengthening our capital structure, developing strong engineering and project execution teams***, and commencing our capital allocation program . . . . ***These efforts have positioned Fluor to deliver significant value and opportunities for our clients, employees and shareholders.***

28.    Also on February 18, 2025, Fluor hosted a conference call with investors and analysts to discuss the Company's Q4 and FY 2024 financial results.  During his prepared remarks on the call, Defendant Breuer discussed Fluor's infrastructure projects in the Urban Solutions segment, stating, in relevant part:

> ***Our infrastructure business continues to make good progress on the Gordie Howe project.*** Construction is now 94% complete, and handover of the U.S. port of entry is in progress. Substantial completion is targeted for Q3 of 2025.
>
> * * *
>
> On the I-635 LBJ project, construction is now 70% complete. Substantial completion is forecasted for Q2 of 2026.

---

[3] All emphases hereinafter are added unless otherwise indicated.

29.     The same day, Fluor filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its Q4 and FY ended December 31, 2024 (the "2024 10-K"). With respect to the purported effectiveness of Fluor's risk management strategy, the 2024 10-K stated, in relevant part:

> We believe we have the ability to assess, mitigate and manage project risk, particularly in challenging locations or circumstances. Our experienced management and execution team employs a **systematic and disciplined approach** to identifying, assessing and managing risks. We believe that this risk management approach helps us control costs and adhere to clients' schedules.

(Emphasis in original.)

30.     The 2024 10-K also contained generic, boilerplate risk warnings regarding seasonality in Fluor's operations, including, *inter alia*, customer spending patterns, stating, in relevant part:

> Our operations can be subject to seasonal and other variations. These variations are influenced by, among other things, weather, customer spending patterns, bidding seasons, receipt of required regulatory approvals, project timing and schedules, and holidays. For example, harsher weather conditions in winter may impact our ability to complete work in parts of North America and the holiday season schedule affects our productivity during this period. For these reasons, coupled with the number and significance of client contracts commenced and completed during a particular period, as well as the timing of expenses incurred for corporate initiatives, it is not unusual for us to experience seasonal changes or fluctuations in our quarterly operating results.

Plainly, the foregoing risk warnings were generic, catch-all provisions that were not tailored to Defendants' actual known risks regarding reduced client spending or hesitation as a result of current or looming economic uncertainty, much less how such factors impacted, or were likely to impact, the Company's financial guidance for FY 2025.

31.     Appended as exhibits to the 2024 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Constable and Brennan certified that

the 2024 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

32.     On May 2, 2025, Fluor issued a press release reporting its financial results for Q1 2025.   That press release reaffirmed the Company's financial guidance for FY 2025, notwithstanding acknowledged economic uncertainty and related, purportedly "potential" impacts on client projects, stating, in relevant part:

> The company is engaging with clients to address the potential impacts of increased economic uncertainty on their projects. ***Based on our current assessment of our backlog, the performance of our segments and the economic environment, the company is maintaining its adjusted EBITDA guidance for 2025 of $575 to $675 million and adjusted EPS of $2.25 to $2.75 per share***. Estimates for 2025 assume a tax rate of 30 to 35% percent.

33.     In addition, the press release quoted Defendant Breuer as touting Fluor's purported ability to deliver on projects and drive substantial growth, notwithstanding complexities in the market:

> ***We are well positioned for the grow and execute chapter of our Building a Better Future strategy. As we continue to deliver on our projects and take in quality backlog, we see substantial opportunities for growth in our key markets***. Our businesses are focused on organic growth and our core competencies will deliver results that support our customers' needs . . . . ***Today, more than ever, clients can rely on Fluor's project delivery expertise to help navigate the complexities of the market.***

34.     The same press release also quoted Defendant Regan as touting Fluor's purportedly improved financial stability, project execution excellence, and risk management discipline, stating:

Today *we are on a much more solid footing financially*, supported by a majority reimbursable backlog and a robust outlook for cash generation . . . . As we transition to supporting growth in the business over the next strategic planning period, we aim to enhance operating margins through *project execution excellence*, lean processes, *and risk management discipline*, all while maintaining our commitment to return capital to shareholders.

35.    Also on May 2, 2025, Fluor hosted a conference call with investors and analysts to discuss the Company's Q1 2025 financial results.  During his prepared remarks on the call, Defendant Breuer stated, *inter alia*, that "[t]he Gordie Howe project is now 96% complete, and *we're on track to hand over the US port of entry* in July, getting us closer to our completion date this fall."

36.    With respect to the impact of ongoing economic uncertainty on Fluor's clients and, accordingly, the Company's business, Defendant Breuer stated, *inter alia*:

I wanted to share a few observations from my interactions with clients over the past few weeks in the context of the current economic sentiment. Our clients are always looking for the best way to deploy their capital on projects. Decisions include where to build, the size of facilities, the best supply chain solution and the timing of projects. *Fluor's grow and execute strategy and supply chain acumen position us well to support these efforts, whether domestic or international. We're seeing clients forge ahead with their projects where there is a clear time to market driver. They're not slowing down.*

However, there are some clients that are more sensitive to cost and GDP growth, and they require further market clarity and cost certainty before committing to final investment decisions. *Nonetheless, these clients continue to issue work releases to advance the underlying engineering and design until full project awards are signed.* Looking at our remaining new awards outlook for this year, we are already engaged and providing services on over 90% of underlying award revenue.

37.    When asked by an analyst "to further elaborate on [his] prepared remarks on [his] discussion with clients[,]" Defendant Breuer stated, in relevant part:

[W]e have been engaging with our clients at various levels including the very senior levels of our key clients. And I would say that *most of the projects in the markets we're tracking- the fundamentals of those projects are still there, whether it's the time to market projects . . . . Those for sure are moving forward. But even the other ones that are more price sensitive and GDP growth and*

***market certainty, those still have very sound fundamentals behind them.*** What those clients are looking for is certainty in the environment . . . . [I]t's no surprise that the entire business community is watching very carefully what's happened with the trade negotiations when we're hopeful that there's going to be some good news on certain fronts in the coming days and weeks so that we can start seeing some clarity in broader picture. ***But projects in energy, projects in copper, I would say are requiring a little bit more certainty, whereas projects in the ATLS [advanced technologies and life sciences] arena and project in the Mission Solutions space, I would say have greater clarity today and are proceeding as planned.***

38.    In response to another analyst's inquiry regarding Fluor's anticipated performance in the second half of 2025, noting a delay in at least one project with Dow Corp., Defendant Breuer stated, in relevant part:

Dow came out and very clearly explained the reasons for slowing down construction activities or not slowing down engineering and procurement, and it had to do with a combination of decisions around their market, the timing of the pricing of their products and so on. ***We don't think[,] we're not seeing a trend of that in our other clients*** . . . . Have people who are having yet FID [final investment decision] projects are expecting or looking for further clarity and certainty. ***But we're not seeing a trend.***

And because we're involved on these projects and like [Defendant Regan] said, ***we're working hand in hand with our clients with these mitigation strategies around the tariffs and other factors. We feel pretty strongly about the quality of the backlog and our ability to convert. The exact timing of the conversion may be a little uncertain. Maybe they push out just a tad, but we're not expecting significant underutilization compared to what the baseline was, say, a month or two ago.***

39.    In response to the same question, Defendant Regan stated, in relevant part:

I think a couple of points. One, just part and parcel of our execution strategy is an early buyout on the procurement front. ***So the things that are in backlog and ongoing tend to- it's our belief that they're going to continue moving forward.*** And then maybe [Defendant Breuer]'s prepared remarks was also hinting at kind of the earnings potential of the backlog. ***So even as things are slowing down, we are performing work on the vast majority of the things we see coming. And so from an earnings potential kind of unmitigated there***, but obviously a ***little bit*** of disruption on the new award front.

40.    In response to another question by the same analyst regarding Defendants' confidence in certain aspects of their financial guidance for 2025, and "[w]here does the confidence come from given the macro uncertainty[,]" Defendant Breuer stated, in relevant part:

> *[T]he confidence comes in our close collaboration with these clients on the front end work.* And you look at whether it's copper, whether it's further additional pharmaceutical work, whether it's data centers. There's a midstream compression project in the US. There's a sustainable chemicals project. There's a project with a power and LNG component feeding a new power plant. These are real projects with clear economic incentives. Some of it is US based, some of it is international. So our diversification is helping us.
>
> There are some large opportunities out there . . . . *So despite the nervousness in the markets, some of these key strategic pursuits we feel are solid enough and have a compelling enough reason that we feel good about it.*

41.    The same day, Fluor filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its Q1 ended March 31, 2025 (the "Q1 2025 10-Q"). Despite Defendants' acknowledgement of increased economic uncertainty in the current market environment, the Q1 2025 10-Q represented that "[t]here have been no material changes from our risk factors as disclosed in the 2024 10-K."

42.    With respect to the performance of Fluor's Urban Solutions segment, the Q1 2025 10-Q stated, in relevant part:

> Revenue significantly increased in the 2025 Quarter due to the ramp up of execution activities on life sciences projects awarded in the last 18 months as well as revenue growth on a large metals project and a large mining project. The increase in 2025 revenue was further driven by progression to completion on a metals project in which there was a change in scope and removal of CFM.
>
> Segment profit increased in the 2025 Quarter due to an increase in execution activities on life sciences projects awarded in the last 18 months and a large metals project *as well as a decrease in cost due to design optimization on a highway project*. We also recognized profit on a metals project upon a change in percentage of completion due to a reduction in scope. *The increase in segment profit was partially offset by the effects of unfavorable foreign currency movements on an international bridge project.* Segment profit margin in the 2025 Quarter was consistent with the 2024 Quarter.

New awards increased during the 2025 Quarter due to a large EPC award for a second multi-billion dollar pharmaceutical facility in Indiana and a construction contract for State Highway 6 in Texas. Backlog increased during the 2025 Quarter due to these 2 large awards. Our staffing business does not report new awards or backlog.

43.     Appended as exhibits to the Q1 2025 10-Q were substantively the same SOX certifications as referenced in ¶ 31, *supra*, signed by Defendants Breuer and Regan.

44.     The statements referenced in ¶¶ 26-43 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) costs associated with the Gordie Howe, I-635/LBJ, and I-35 projects were growing because of, *inter alia*, subcontractor design errors, price increases, and scheduling delays; (ii) the foregoing, as well as customer reduction in capital spending and client hesitation around economic uncertainty, was having, or was likely to have, a significant negative impact on the Company's business and financial results; (iii) accordingly, Fluor's financial guidance for FY 2025 was unreliable and/or unrealistic, the effectiveness of the Company's risk mitigation strategy was overstated, and the impact of economic uncertainty on the Company's business and financial results was understated; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

45.     In addition, throughout the Class Period, Fluor's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations.  Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Fluor to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain

how each risk affects the [Company] or the securities being offered." Defendants failed to disclose that costs associated with the Gordie Howe, I-635/LBJ, and I-35 projects were growing because of, *inter alia*, subcontractor design errors, price increases, and scheduling delays. Defendants also failed to disclose that customer reduction in capital spending and client hesitation around economic uncertainty was having, or was likely to have, a significant negative impact on the Company's business and financial results. Defendants' failure to disclose the foregoing issues violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

46.    Defendants also violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Fluor to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose, *inter alia*, the issues described *supra* at ¶ 45 violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

**The Truth Emerges**

47.    On August 1, 2025, during pre-market hours, Fluor issued a press release reporting its financial results for Q2 2025 (the "Q2 2025 Earnings Release"). Among other results, the Q2 2025 Earnings Release reported Q2 non-GAAP EPS of $0.43, missing consensus estimates by $0.13, and revenue of $3.98 billion, representing a 5.9% Y/Y decline and missing consensus estimates by $570 million. Defendants blamed these disappointing results on, *inter alia*, growing costs in three infrastructure projects due to subcontractor design errors, price increases, and scheduling delays, as well as reduced capital spending by customers, stating, in relevant part:

14

Urban Solutions reported a profit of $29 million in the second quarter compared to $105 million in the second quarter of 2024. ***Results reflect a $54 million net impact of cost growth and expected recoveries on three infrastructure projects, due to subcontractor design errors, the related schedule impacts, and price escalation.***

48.     The Q2 2025 Earnings Release also provided a negatively revised financial outlook for FY 2025, guiding to adjusted EBITDA of $475 million to $525 million, down significantly from Defendants' prior guidance of $575 million to $675 million, and adjusted EPS of $1.95 per share to $2.15 per share, down significantly from Defendants' prior guidance of $2.25 per share to $2.75 per share, citing "client hesitation around economic uncertainty and its impact on new awards and project delays and results for the quarter[.]"

49.     Also on August 1, 2025, during pre-market hours, Fluor hosted a conference call with investors and analysts to discuss the Company's Q2 2025 financial results (the "Q2 2025 Earnings Call").  During the call, Defendant Breuer disclosed that the infrastructure projects that had negatively impacted Fluor's Q2 2025 results were the Gordie Howe, I-635/LBJ, and I-35 projects, stating, in relevant part:

> [I]nfrastructure experienced cost growth on 3 projects during the quarter. ***On Gordie Howe, cost increase in the second quarter as we experienced rework and additional efforts required to hand over both ports of entry.*** This project is now 97% complete and we expect substantial completion this fall. ***The 635/LBJ project experienced cost increases in construction materials as well as labor productivity impacts.*** This project is 78% complete with an expected substantial completion date in Q2 of 2026.
>
> Finally, ***on I-35 Phase 2 the project experienced increased costs due to a subcontractor default, third-party utility delays and mitigation costs related to these delays.*** This project is 58% complete and targeting substantial complete in Q4 of 2026. To address the issues across these projects, we have increased operations oversight and strengthening the execution teams.

50.     The foregoing disclosures in the Q2 2025 Earnings Release and Call shocked the market.   As reported by *Bloomberg* that day, "Fluor shares f[e]ll as much as 34%, ***the most intraday since March 2020***," with a Citi analyst noting that "[a]lthough our expectations were

already tempered heading into the print, core earnings were still disappointing, reflecting a muted project environment and drag from legacy/infrastructure contracts[.]"

51.     Following the Q2 2025 Earnings Release and Call, Fluor's stock price fell $15.35 per share, or 27.04%, to close at $41.42 per share on August 1, 2025.

52.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

53.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  For example, while disseminating the materially false and misleading statements alleged herein to maintain artificially inflated prices for Fluor securities, Defendant Constable sold hundreds of thousands of shares of the Company's common stock during the Class Period for millions of dollars in proceeds.  Specifically, during the Class Period, Defendant Constable enriched himself by approximately $11.28 million by selling 263,156 shares of Fluor's common stock.  Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  Indeed, the Gordie Howe, I-635/LBJ, and I-35 projects were significant to the Company's Urban Solutions segment results—the segment which accounted for the largest portion of the Company's revenue and profit throughout 2024 and the Class Period.  Defendants were undoubtedly highly focused on this operating segment and those projects during the Class Period while disseminating the materially false and misleading statements alleged herein.  Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

16

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Fluor securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Fluor securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Fluor or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fluor;

- whether the Individual Defendants caused Fluor to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Fluor securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

60.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Fluor securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Fluor securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

61.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

63.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

19

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fluor securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Fluor securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

66.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Fluor securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Fluor's finances and business prospects.

67.    By virtue of their positions at Fluor, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

68.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Fluor, the Individual Defendants had knowledge of the details of Fluor's internal affairs.

69.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Fluor.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Fluor's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Fluor securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Fluor's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Fluor securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

70.    During the Class Period, Fluor securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Fluor securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were

paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Fluor securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Fluor securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

71.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

72.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

73.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.    During the Class Period, the Individual Defendants participated in the operation and management of Fluor, and conducted and participated, directly and indirectly, in the conduct of Fluor's business affairs.  Because of their senior positions, they knew the adverse non-public information about Fluor's misstatement of income and expenses and false financial statements.

75.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Fluor's

financial condition and results of operations, and to correct promptly any public statements issued by Fluor which had become materially false or misleading.

76.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Fluor disseminated in the marketplace during the Class Period concerning Fluor's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Fluor to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Fluor within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Fluor securities.

77.     Each of the Individual Defendants, therefore, acted as a controlling person of Fluor. By reason of their senior management positions and/or being directors of Fluor, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Fluor to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Fluor and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

78.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Fluor.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 15, 2025                    Respectfully submitted,

THE BRISCOE LAW FIRM, PLLC

*/s/ Willie C. Briscoe*
Willie C. Briscoe
State Bar Number 24001788
5473 Blair Rd., Suite 200
Dallas, Texas 75231
Telephone: (972) 521-6868
Facsimile: (281) 254-7789
wbriscoe@thebriscoelawfirm.com

POMERANTZ LLP
Jeremy A. Lieberman
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer*
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Attorneys for Plaintiff*

*\*Pro hac vice applications forthcoming*