UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SABATINO MAGLIONE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FLUOR CORPORATION, DAVID E. CONSTABLE, JAMES R. BREUER, JOHN C. REGAN, and JOSEPH L. BRENNAN, <br><br> Defendants. | Civil Action No. 3:25-cv-02496-N |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF
SABATINO MAGLIONE FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL
OF SELECTION OF COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ......................................................................................................................... 5

I.  MAGLIONE SHOULD BE APPOINTED LEAD PLAINTIFF ...................................... 5

    A.  Maglione Is Willing to Serve as Class Representative ........................................... 6

    B.  Maglione Has the "Largest Financial Interest" in the Action ................................ 6

    C.  Maglione Otherwise Satisfies the Requirements of Rule 23 ................................. 7

    D.  Maglione Will Fairly and Adequately Represent the Interests of the Class
        and Is Not Subject to Unique Defenses .................................................................. 10

II.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 11

CONCLUSION ...................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buettgen v. Harless*,
 263 F.R.D. 378 (N.D. Tex. 2009) ......................................................................................7

*Giovagnoli v. GlobalSCAPE, Inc.*,
 No. SA-17-CV-753-XR, 2017 WL 11220692 (W.D. Tex. Nov. 6, 2017) ...............................9

*Hohenstein v. Behringer Harvard REIT I, Inc.*,
 No. 3:12-CV-3772-G, 2012 WL 6625382 (N.D. Tex. Dec. 20, 2012)......................................8

*In re BP, PLC Sec. Litig.*,
 758 F. Supp. 2d 428 (S.D. Tex. 2010) ................................................................................11

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001)................................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
 No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .........................7

*In re Enron Corp., Sec. Litig.*,
 206 F.R.D. 427 (S.D. Tex. 2002).....................................................................................7, 11

*In re Olsten Corp. Sec. Litig.*,
 3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................7

*James v. City of Dallas, Tex.*,
 254 F.3d 551 (5th Cir. 2001) ..............................................................................................8

*Lax v. First Merchants Acceptance Corp.*,
 No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)..............................6, 7

*Mullen v. Treasure Chest Casino, LLC*,
 186 F.3d 620 (5th Cir. 1999) ..............................................................................................9

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
 566 F. Supp. 3d 712 (S.D. Tex. 2021) .................................................................................7

*Ramzan v. GDS Holdings, Ltd.*,
 No. 4:18CV539-ALM-KPJ, 2018 WL 10780485 (E.D. Tex. Oct. 26, 2018)...........................9

*Shiqiang Chen v. NQ Mobile*,
 No. 4:18-CV-00096, 2018 WL 2441589 (E.D. Tex. May 31, 2018) ......................................8

*Singh v. 21 Vianet Grp., Inc.*,
  No. 2:14-CV-894-JRG-RSP, 2015 WL 5604385 (E.D. Tex. Sept. 21, 2015)...........................8

*Strong v. AthroCare Corp.*,
  No. A-08-CA-574-SS, 2008 WL 11334942 (W.D. Tex. Dec. 10, 2008) .................................7

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................................... *passim*

Securities Exchange Act of 1934.........................................................................................1, 6, 9

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23.......................................................................................................... *passim*

Sabatino Maglione ("Maglione") respectfully submits this Memorandum of Points and Authorities in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Maglione as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Fluor Corporation ("Fluor" or the "Company") securities between February 18, 2025 and July 31, 2025, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer") as Co-Lead Counsel and The Briscoe Law Firm, PLLC ("BLF") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that Defendants defrauded investors in violation of the Exchange Act. Fluor investors, including Maglione, incurred significant losses following the disclosures of Defendants' alleged fraud, which caused Fluor's share price to fall sharply, damaging Maglione and other Fluor investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants with the largest financial interest in the outcome of the Action and who satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with his purchases of Fluor securities during the Class Period, Maglione incurred losses of approximately $5,770. *See* Appendix of Exhibits in Support of Motion ("App.") at 2. Accordingly, Maglione believes that he has the largest financial interest in the relief sought in this Action. Beyond his significant financial interest, Maglione also meets the

1

applicable requirements of Rule 23 because his claims are typical of those of absent Class members and he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute this Action on behalf of the Class, Maglione has selected Pomerantz and Holzer as Co-Lead Counsel for the Class. These firms and their attorneys are highly experienced in the areas of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes. Maglione has also selected the highly respected law firm BLF, which maintains an office in this District and, as reflected in its firm resume, has significant experience in complex and securities matters, to serve as Liaison Counsel for the Class.

Accordingly, Maglione respectfully requests that the Court enter an Order appointing Maglione as Lead Plaintiff for the Class and approving his selection of Pomerantz and Holzer as Co-Lead Counsel and BLF as Liaison Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, Fluor provides engineering, procurement, and construction ("EPC"), fabrication and modularization, and project management services worldwide. Dkt. No. 1 ¶ 2. The Company operates through three segments: Urban Solutions, Energy Solutions, and Mission Solutions. *Id.*

Throughout 2024 and the first quarter of 2025, Fluor's Urban Solutions segment accounted for the largest portion of the Company's revenue and profit. *Id.* ¶ 3. The Urban Solutions segment offers EPC and project management services to the advanced technologies and manufacturing, life sciences, mining and metals, and infrastructure industries, as well as provides professional staffing services. *Id.* The Company's infrastructure projects in this segment include work on, *inter alia*,

the Gordie Howe International Bridge ("Gordie Howe"), as well as the Interstate 365 Lyndon B. Johnson ("I-635/LBJ") and Interstate 35E ("I-35") highways in Texas.  *Id.*

In February 2025, Fluor provided financial guidance for the full year ("FY") of 2025, including adjusted EBITDA[1] of $575 million to $675 million and adjusted earnings per share ("EPS") of $2.25 per share to $2.75 per share.  *Id.* ¶ 4.  Defendants reaffirmed the foregoing financial guidance in May 2025, notwithstanding their acknowledgement of the potential negative impacts of ongoing economic uncertainty on Fluor's business resulting from trade tensions and other market conditions.  *Id.*  Contemporaneously, Defendants touted, *inter alia*, the purported health and stability of Fluor's and its customers' operations and the strength of the Company's risk mitigation strategy, both for itself and its clients.  *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding Fluor's business, operations, and prospects.  *Id.* ¶ 5.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) costs associated with the Gordie Howe, I-635/LBJ, and I-35 projects were growing because of, *inter alia*, subcontractor design errors, price increases, and scheduling delays; (ii) the foregoing, as well as customer reduction in capital spending and client hesitation around economic uncertainty, was having, or was likely to have, a significant negative impact on the Company's business and financial results; (iii) accordingly, Fluor's financial guidance for FY 2025 was unreliable and/or unrealistic, the effectiveness of the Company's risk mitigation strategy was overstated, and the impact of economic uncertainty on the Company's business and financial results was understated; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.  *Id.*

---

[1] "EBITDA" stands for earnings before interest, taxes, depreciation, and amortization.

3

On August 1, 2025, Fluor issued a press release reporting its financial results for the second quarter ("Q2") of 2025. *Id.* ¶ 6. Among other results, the press release reported Q2 non-GAAP[2] EPS of $0.43, missing consensus estimates by $0.13, and revenue of $3.98 billion, representing a 5.9% year-over-year decline and missing consensus estimates by $570 million. *Id.* Defendants blamed these disappointing results on, *inter alia*, growing costs in multiple infrastructure projects due to subcontractor design errors, price increases, and scheduling delays, as well as reduced capital spending by customers. *Id.* The same press release also provided a negatively revised financial outlook for FY 2025, guiding to adjusted EBITDA of $475 million to $525 million, down significantly from Defendants' prior guidance of $575 million to $675 million, and adjusted EPS of $1.95 per share to $2.15 per share, down significantly from Defendants' prior guidance of $2.25 per share to $2.75 per share, citing "client hesitation around economic uncertainty and its impact on new awards and project delays and results for the quarter[.]" *Id.*

The same day, Fluor hosted a conference call with investors and analysts to discuss the Company's Q2 2025 financial results. *Id.* ¶ 7. During that call, the Company's Chief Executive Officer, Defendant James R. Breuer, disclosed that the infrastructure projects that had negatively impacted Fluor's Q2 2025 results were the Gordie Howe, I-635/LBJ, and I-35 projects. *Id.*

Following the foregoing disclosures, Fluor's stock price fell $15.35 per share, or 27.04%, to close at $41.42 per share on August 1, 2025. *Id.* ¶ 8.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Maglione and other Class members have suffered significant losses and damages. *Id.* ¶ 9.

---

[2] "GAAP" stands for generally accepted accounting principles.

**ARGUMENT**

**I.    MAGLIONE SHOULD BE APPOINTED LEAD PLAINTIFF**

Maglione should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this Action to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires a plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II).  Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice, and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate.  *See id.* § 78u-4(a)(3)(B)(i)-(ii).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff.  *Id.* § 78u-4(a)(3)(B)(i).  The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Maglione satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.      **Maglione Is Willing to Serve as Class Representative**

On September 15, 2025, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Fluor and other defendants, and advising investors in Fluor securities that they had until November 14, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* App. at 4-6.

Maglione has filed the instant motion pursuant to the Notice, and he has submitted a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See* Dkt. No. 1-2 at *1-2.[3]  Accordingly, Maglione satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.      **Maglione Has the "Largest Financial Interest" in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  To the best of his knowledge, Maglione has the largest financial interest of any Fluor investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5

---

[3] The schedule of Maglione's Class Period transactions in Fluor securities appears at Dkt. No. 1-3 at *1.

(N.D. Ill. Aug. 11, 1997). In accord with other courts nationwide,[4] these so-called *Lax* factors have been adopted by courts in the Fifth Circuit, including in this District. *See, e.g.*, *Buettgen v. Harless*, 263 F.R.D. 378, 380 (N.D. Tex. 2009); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002). Of the *Lax* factors, courts in the Fifth Circuit generally emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Buettgen*, 263 F.R.D. at 380-81 (equating financial interest with monetary loss); *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 717 (S.D. Tex. 2021) (finding "'[c]ourts consistently consider the fourth factor—the approximate losses suffered—as most determinative'" and evaluating financial interest on that basis (quoting *Strong v. AthroCare Corp.*, No. A-08-CA-574-SS, 2008 WL 11334942, at *5 (W.D. Tex. Dec. 10, 2008)).

In connection with his purchases of Fluor securities during the Class Period, Maglione incurred losses of approximately $5,770. *See* App. at 2. As such, Maglione believes that he possesses the largest financial interest in the outcome of this litigation within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**C.        Maglione Otherwise Satisfies the Requirements of Rule 23**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the

---

[4] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"In making its determination that a proposed Lead Plaintiff satisfies the requirements of Rule 23, a court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient." *Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 3:12-CV-3772-G, 2012 WL 6625382, at *2 (N.D. Tex. Dec. 20, 2012); *see also Singh v. 21 Vianet Grp., Inc.*, No. 2:14-CV-894-JRG-RSP, 2015 WL 5604385, at *1 (E.D. Tex. Sept. 21, 2015) ("The Court must determine whether [movant] has *prima facie* evidence that [it] meets the typicality and adequacy requirements of Rule 23."). Moreover, "[f]or the purposes of the lead plaintiff analysis, only the typicality and adequacy prongs of Rule 23 are relevant." *Shiqiang Chen v. NQ Mobile*, No. 4:18-CV-00096, 2018 WL 2441589, at *2 (E.D. Tex. May 31, 2018) (internal quotation marks omitted); *see also Singh*, 2015 WL 5604385, at *2 ("When naming a lead plaintiff, a court considers only typicality and adequacy.").

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's claims have "the same essential characteristics as those of the other proposed class members." *Singh*, 2015 WL 5604385, at *2. "'Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001) (quoting 5 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 23.24[4] (3d ed. 2000)).

Maglione's claims are typical of those of the Class. Maglione alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Fluor, or by omitting to state material facts necessary to make the statements they did make not misleading. Maglione, like other Class members, purchased Fluor securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Fluor's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A proposed lead plaintiff is an adequate representative by showing zeal and competence of the representative's counsel, and a willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Giovagnoli v. GlobalSCAPE, Inc.*, No. SA-17-CV-753-XR, 2017 WL 11220692, at *4 (W.D. Tex. Nov. 6, 2017). The class representative must also have a "sufficient interest in the outcome of the case to ensure vigorous advocacy[.]" *Ramzan v. GDS Holdings, Ltd.*, No. 4:18CV539-ALM-KPJ, 2018 WL 10780485, at *3 (E.D. Tex. Oct. 26, 2018). Moreover, "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999).

9

Maglione is an adequate representative for the Class.  As set forth in greater detail below, in Pomerantz, Holzer, and BLF, Maglione has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz and Holzer to the Court for approval as Co-Lead Counsel for the Class, as well as BLF to the Court for approval as Liaison Counsel for the Class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between Maglione's interests and those of the Class.  Moreover, Maglione has submitted a sworn Certification declaring his commitment to protecting the interests of the Class (*see* Dkt. No. 1-2 at *1-2), and his significant monetary losses as a result of the Defendants' alleged malfeasance demonstrates that he has a sufficient interest in the outcome of this Action to ensure vigorous advocacy on behalf of the Class.

Further demonstrating his adequacy, Maglione has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* App. at 8-11 ¶¶ 1-7, 9-11.

**D.  Maglione Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption favoring Maglione's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Maglione's ability and desire to fairly and adequately represent the Class has been discussed above. Maglione is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Maglione should be appointed Lead Plaintiff for the Class.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel for the Class, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 442 (S.D. Tex. 2010). "The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to 'protect the interests of the [plaintiff] class.'" *Enron*, 206 F.R.D. at 441 (alteration in original) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)).

Here, Maglione has selected Pomerantz and Holzer as Co-Lead Counsel and BLF as Liaison Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* App. at 13-23. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* at 13. For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* at 14. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010.

11

*See, e.g.*, *id.* at 14-17. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at 14.

Holzer, too, is highly experienced in the areas of securities litigation and class actions. *See id.* at 75-78. Holzer recently recovered $22.25 million for the class of investors in *Davis v. Yelp, Inc., et al.*, No. 18-CV-400-EMC (N.D. Cal.), and $20 million for the class of investors in *Peralta v. Grana y Montero S.A.A., et al.*, No. 17-cv-1105-LDH (E.D.N.Y.), is currently serving as Co-Lead Counsel along with Pomerantz on behalf of a class of investors in *Blake v. Canoo, Inc., et al.*, No. 21-cv-2873-FMO (C.D. Cal.), and has successfully served as Co-Lead Counsel in numerous other shareholder class actions during the firm's 20-year history. *See id.*

Likewise, BLF is well-qualified to serve as Liaison Counsel for the Class. As its firm resume reflects, BLF maintains an office in Dallas, Texas, and the firm specializes in securities class action matters, among other practice areas. *See id.* at 84-87. BLF has experience in achieving substantial recoveries in class actions, and its attorneys have extensive familiarity with the Local Civil Rules and practice norms of this District. *See id.*

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Maglione's choice of counsel, with Pomerantz and Holzer as Co-Lead Counsel and BLF as Liaison Counsel, have the skill, knowledge, expertise, and experience that will enable these firms to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Maglione's selection of Pomerantz and Holzer as Co-Lead Counsel and BLF as Liaison Counsel, the members of the Class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Maglione respectfully requests that the Court issue an Order: (1) appointing Maglione as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz and Holzer as Co-Lead Counsel and BLF as Liaison Counsel for the Class.

Dated:  November 14, 2025

Respectfully submitted,

*/s/ Willie C. Briscoe*
WILLIE C. BRISCOE
State Bar Number 24001788
THE BRISCOE LAW FIRM, PLLC
5473 Blair Road, Suite 200
Dallas, Texas 75231
Telephone: (972) 521-6868
Facsimile: (281) 254-7789
wbriscoe@thebriscoelawfirm.com

*Counsel for Plaintiff Sabatino Maglione and Proposed Liaison Counsel for the Class*

POMERANTZ LLP
Jeremy A. Lieberman
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer*
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Counsel for Plaintiff Sabatino Maglione and Proposed Co-Lead Counsel for the Class*

*\*Pro hac vice applications forthcoming*

13

## CERTIFICATE OF SERVICE

This is to certify that on November 14, 2025, I have caused to be filed the above and foregoing on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and exact copies of this filing.

/s/ Willie C. Briscoe
Willie C. Briscoe

14